15269

CHANDLER *ET AL.* v. BRITTON *ET AL.*

(15 S. E. (2d), 344)

304

October, 1940.

*Messrs. Lee & Shuler,* of Kingstree, for appellant, 

*Mr. M. L. Meadors,* of Florence, for respondent, 

May 30, 1941.

*Per curiam*

On November 30, 1921, J. W. Chandler and his wife, Ruth H. Chandler, entered into a written agreement whereby they were to thereafter live apart from each other, and whereby the custody, tuition, maintenance and support of

their only child, Dodie Eugenia Chandler, was surrendered and granted unto the wife. The child was then about two years old. In order to satisfy the obligation of the father to support and maintain the child, it was provided in said agreement that he should pay into Court the sum of two thousand dollars to be held in trust for the benefit of the child.

Thereafter, in December, 1921, the infant child, by a guardian *ad litem* and her mother, brought suit in the Court of Common Pleas for Williamsburg County against J. W. Chandler for the ratification, confirmation and approval of the said separation agreement. This suit resulted in a decree and judgment of the Court, dated January 7, 1932, and the portion of said decree pertinent to the issues now before this Court, is as follows: "It is further ordered, adjudged and decreed, that the defendant, J. W. Chandler, forthwith pay over to and deposit with the Clerk of Court for Williamsburg County the sum of Two Thousand ($2,-000.00) Dollars to be held in trust for the support, maintenance and tuition of the said Dodie Eugenia Chandler during her minority to be paid to the said minor, or its mother for said purpose in such sums, at such times and in such manner as shall be ordered by the Court of Common Pleas of Williamsburg County upon a petition filed in said Court by the General Guardian of said minor, or by its mother, asking the same."

In accordance with the quoted provision of the decree, the sum of $2,000.00 was duly paid into the hands of J. D. Britton, the then Clerk of Court for Williamsburg County, who thereafter deposited the same in the Bank of Kingstree, Kingstree, S. C., such deposit being in the savings department of the bank. The record does not disclose the date of payment to the Clerk of Court, but it does appear that the deposit in the bank was made on January 26, 1922. The deposit of the funds was made without the approval of the Court of Common Pleas for Williamsburg County being first obtained, in fact, no such approval was ever obtained. Upon application of Ruth H. Chandler, the Court on July

19, 1923, ordered the clerk to pay over to her the sum of $250.00 out of the fund referred to, and this amount was promptly paid. No other sums were ordered paid out of the fund and the balance thereof remained on deposit in the savings department of the Bank of Kingstree, which on the 5th day of June, 1925, was taken over by the State Bank Examiner and its affairs thereafter liquidated by a Receiver. On April 4, 1932, a dividend of $40.27 was paid from the collection of the liability of certain stockholders, which sum was paid over to either Ruth H. Chandler or the child. No other sums have been paid out of the fund.

J. D. Britton remained the Clerk of Court for Williamsburg County by successive elections until 1936. On December 20, 1920, shortly before the commencement of his first term of office as Clerk of Court, J. D. Britton filed his official bond, as required by statute, with the appellant, United States Fidelity & Guaranty Company, as surety thereon, and it remained as such surety until Britton went out of office in 1936.

After the failure of the Bank of Kingstree, Ruth H. Chandler made several oral demands upon Britton for the payment of the fund, but no part thereof has been paid. The present action was commenced in February, 1940, by a petition in the original cause, in which the child, through a guardian *ad litem,* and her mother, seek to hold Britton and his surety, the appellant, United States Fidelity & Guaranty Company, liable on the official bond of Britton for the loss of said funds in the Bank of Kingstree, interest thereon from the date of deposit thereof in the bank, and the penalties as prescribed by Section 3613 of the 1932 Code of Laws of South Carolina. The petition alleges the facts substantially as set forth above, and assigns as breaches of the official bond of Britton as Clerk of Court (a) the failure and neglect to invest the fund properly, (b) the failure and neglect to obtain the approval of the Court having jurisdiction of the fund before depositing same in the bank (c) the depositing of the fund in the savings department of the

bank without the approval of the Court, (d) the failure and neglect to withdraw the funds before the closing of the bank, (e) the failure and neglect to require the bank to furnish security for the protection of the deposit, (f) the failure to exercise proper care and diligence to safeguard the fund, and (g) the failure to deliver and pay over the fund upon demand.

The answer of the appellant, United States Fidelity & Guaranty Company, admits substantially and materially the facts as above set forth, but denies any negligence on the part of Britton, its principal, in the handling of the fund or any breach of his official bond by the loss of the fund through the failure of the bank, for the following reasons: (a) That the deposit of·the fund with the clerk and the receipt thereof was not one of his official duties as contemplated by the bond; (b) that it was not required of the clerk that he obtain the approval of the Court before making the deposit in question; and (c) that the Clerk exercised the degree of care and prudence required of him by law in making the deposit. The answer of Britton does not appear in the record as he has not appealed from the order for judgment or the judgment entered thereon.

A demurrer was interposed to the answers of Britton and his surety upon the ground that it appeared upon the face of same that they failed to state facts sufficient to constitute a defense to the cause of action set forth in the petition. Later a motion for judgment upon the pleadings was made and upon the hearing of the demurrer and motion, it was agreed that the Court should dispose of the case on the merits by a decision of the legal questions raised by the pleadings. The lower Court in an order for judgment held that the act of Britton in receiving the money in question was in the proper scope of his duties as Clerk of Court and the fund was therefore protected by his official bond; that the failure of the clerk to secure the approval of the Court before making the deposit in question was a violation of Section 9050 of the 1932 Code of Laws of South Carolina, and therefore

the subsequent loss by reason of the failure of the bank rendered his official bond liable for such loss; that the petitioners were entitled to interest on the fund from the date of deposit at the legal rate, and that the petitioners were not entitled to the penalties prescribed by Section 3613 of the 1932 Code of Laws of South Carolina. Both the petitioners and the surety on the bond of Britton have appealed from the order of the lower Court and the petitioners have stated additional grounds upon which they ask this Court to sustain the order. For the sake of brevity, the exceptions and the additional grounds for sustaining the order will not be set out but all issues necessary to disposing of same will be discussed.

It is perfectly clear that the Clerk of Court was acting in his official capacity in receiving the fund in question and that his failure to faithfully perform the duties imposed upon him with reference thereto would constitute a breach of his official bond, for which the surety thereon would be liable. In this respect the order of the lower Court is in accord with our view of the matter.

The duties of the Clerk of Court with respect to the funds presents a more difficult question for consideration. At common law the liability of public officers for funds deposited with them was substantially that of a bailee for hire and they were not liable for the loss of such funds if it occurred without fault on their part. 10 Am. Juris., 957, and Annotation in 59 A. L. R., 60. In *Anderson v. Aetna Casualty & Surety Company,* 175 S. C., 254, 178 S. E., 819, 826, this Court considered the liability of the Receiver of the closed Bank of Chesnee and the surety on his bond for the loss of funds deposited by the Receiver in the Chesnee branch of the Peoples State Bank of South Carolina, and the test of their liability was stated by the present Chief Justice of this Court, writing the opinion of the Court, as follows: " * * * the facts disclosed by the record made it a question for the court and jury to determine whether the receiver in this case has exercised that degree of care and prudence in the management of the receivership

funds which is required by law, to wit, the care, prudence, and diligence which a person of ordinary care, prudence, and diligence would exercise in his own business. * * * "

It would seem therefore, and we so hold, that in the absence of any statutory law to the contrary a public official is not liable for the loss of funds deposited with him if he has exercised that degree of care and prudence in the management of the funds which a person of ordinary care and prudence would exercise in his own business. We are not unmindful of the fact that in several jurisdictions a Clerk of Court is held liable as an insurer for money that comes into his hands and not merely for the failure to exercise care and prudence, but the decided weight of authority is to the contrary and we are unwilling to subscribe to such a doctrine. In a great many instances the insurer doctrine obtains because of related statutory law. ·

If there be no applicable statutory law in this State, then neither Britton nor his surety would be liable for the loss which occurred by reason of the failure of the Bank of Kingstree, unless Britton was negligent in making the deposit in question or. negligent in failing to withdraw the funds so deposited before the closing of the bank. The respondents contend that Section 2827 of the 1932 Code of Laws of South Carolina, which was passed on April 4, 1925, about two months prior to the failure of the Bank of Kingstree, required the Clerk to secure from the bank a bond or pledge of collateral as security for the deposit and his failure to do so constituted a breach of his official bond. It is quite obvious from the text of this section that it applies only to public funds in the hands of the officers of Williamsburg County and that the section is therefore not applicable to the fund here in question.

The decision below that the Clerk and his surety were liable for the loss of the funds by reason of the failure of the bank was based upon the application of Section 9050 of the 1932 Code of Laws of South Carolina, which as construed and applied by the lower Court required

the Clerk to secure an order of the Court before depositing the funds in the bank. At the time of the failure of the Bank of Kingstree, Section 9051 of the 1932 Code of Laws had not been enacted. Section 9050 was passed in 1920. Both sections relate to the investment of funds by certain named fiduciaries. In the case of *In re Willcox (Oakes' Estate v. Oakes)*, 170 S. C., 167, 169 S. E., 890, this Court pointed out the difference between the two sections. The main purpose of each of these sections is, as stated, the regulation of investments by certain classes of fiduciaries, although they differ in other respects.

In the comparatively recent case of *Brannon v. Woodward*, 175 S. C., 1, 178 S. E., 249, this Court considered the liability of an administrator for funds deposited in a bank during the first year of his service without the written approval of the Probate Court as required by Section 9051, of the 1932 Code, and held that a mere deposit of funds belonging to an estate is not such an investment by a fiduciary as is contemplated by the statute, especially during the first year of his service when the deposit is subject to check for the payment of costs and expenses. We see no reason for placing a different interpretation upon Section 9050. In the instant case, the fund in question was subject to be paid out in whole or in part, as might be ordered by the Court from time to time, and there was no duty or obligation on the part of the Clerk to invest the fund, and in fact, he had no right or authority to do so unless specifically ordered by the Court. Nowhere in the record is there any intimation that the Court directed him to make an investment of the fund. Furthermore, the Clerk was not chargeable with interest, as a matter of law, on the funds in his hands.

To say that because the Clerk deposited the fund in question in the savings department of the bank instead of in an open checking account would require that he secure an order of the Court before so doing, and that such act would make Section 9050 of the Code appli-

cable, is highly technical and wanting in logic. It is a matter of common knowledge that at the time here in question banks generally allowed the withdrawal of funds in savings account at any time with only the loss of interest thereon. In fact, the record shows that after the deposit was made in the savings department of the bank, a withdrawal therefrom was promptly made by the Clerk in compliance with an order of the Court to pay a portion of the fund to the parties entitled thereon.

No other statutory law of this State has been called to our attention, and we know of none which would require Britton to obtain the approval of the Court before depositing the funds in question in a bank. The liability of the surety on the official bond of Britton (and of Britton himself, except for the fact that he has not appealed from the judgment entered against him) depends upon whether or not Britton was negligent in the handling of the funds in question, and his conduct in connection with same should be measured by the rule stated in *Anderson v. Aetna Casualty and Surety Company, supra*. As this question has not been determined, it will be necessary for the case to be remanded to the lower Court for trial of this issue.

The lower Court concluded that the penalties prescribed by Section 3613 of the Code were not applicable to a case of this kind, but were intended to punish the failure of an official who willfully refuses to turn over funds in his hand. We are in accord with this view and in addition point out that so far as the record discloses the Court has never ordered the payment of the fund in the hand of the Clerk of Court to the parties until after this suit was brought by the respondents.

Of course, if the bond was breached, it was breached either at the time Britton deposited the trust funds in the Bank of Kingstree, or failed to withdraw the funds prior to the closing thereof, dependent upon the circumstances as hereinabove indicated. However, since the funds were not subject to investment, or to payment to the

beneficiary until directed by the Court, ordinarily such beneficiary would not be entitled to interest thereon until such an order of the Court so directed and payment was refused; but Britton having retired from this office, it was his duty to turn over to his successor any and all funds held by him as Clerk of Court, and therefore if it be adjudicated that Britton was negligent in reference to the trust, interest would be allowable from the date of his retirement as Clerk.

The respondents urge as an additional ground for sustaining the order and judgment of the lower Court the failure of the Clerk to take proper steps for the protection of the funds of the respondents or their withdrawal from the bank in view of the prevailing financial conditions previous to its closing, of which conditions, the said official had full notice and knowledge. In the present state of the record we are unable to sustain this ground, as there is neither proof of the negligence on the part of Britton in the handling of the fund in question nor is there any agreement with reference thereto.

For the reasons stated, the order and judgment appealed from, in so far as same involves the appellant, United States Fidelity & Guaranty Company, is reversed, and this cause remanded to the Court of Common Pleas for Williamsburg County to proceed to trial in accordance with the views herein expressed.

MR. CHIEF JUSTICE BONHAM, MESSRS. JUSTICES BAKER, FISHBURNE and STUKES and MR. ACTING ASSOCIATE JUSTICE T. S. SEASE concur.